NOT RECOMMENDED FOR PUBLICATION OR CITATION

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
LONDON DIVISION

| | | |
|---|---|---|
| GLENN FORD, | ) | |
| | ) | |
| Petitioner, | ) | Civil Action No. 6: 06-10-DCR |
| | ) | |
| V. | ) | |
| | ) | **MEMORANDUM OPINION** |
| JEFF GRONDOLSKY, | ) | **AND ORDER** |
| | ) | |
| Respondent. | ) | |
| | ) | |

** ** ** ** **

Glenn Ford ("Ford"), a prisoner currently incarcerated at the Federal Correctional Institution in Manchester, Kentucky ("FCI-Manchester"), has filed this *pro se* habeas corpus petition pursuant to 28 U.S.C. §2241.  Through this petition, Ford challenges the rescission of his parole in 2001.  [Record No. 2]  The matter is before the Court for screening.  28 U.S.C. §2243; *Harper v. Thoms*, 2002 WL 31388736, *1 (6th Cir. 2002).

As Ford is appearing *pro se*, his petition is held to less stringent standards than those drafted by attorneys.  *Burton v. Jones*, 321 F.3d 569, 573 (6th Cir. 2003); *Hahn v. Star Bank*, 190 F.3d 708, 715 (6th Cir. 1999).  During screening, the allegations in his petition are taken as true and liberally construed in his favor.  *Urbina v. Thoms*, 270 F.3d 292, 295 (6th Cir. 2001).  However, the Court may dismiss the petition at any time, or make any such disposition as law and justice require, if it determines that the petition fails to establish adequate grounds for relief.  *Hilton v. Braunskill*, 481 U.S. 770, 775 (1987).

## I.      BACKGROUND

On November 19, 1987, Ford was sentenced to 39 years in prison for armed robbery by the District of Columbia ("D.C.") Superior Court.  On March 19, 1996, he was released on parole.  However, Ford's parole was revoked on April 10, 1998, by the D.C. Board of Parole for Ford's illegal use of a controlled substance, failure to notify his parole officer of a change of address, and failure to comply with a drug treatment program.

Before Ford's parole status was to be reconsidered on December 23, 1998, the United States Parole Commission ("U.S.P.C.") assumed responsibility for making parole determinations for Ford pursuant to the National Capital Revitalization and Self-Government Improvement Act. D.C. Code §24-131(a).  The Act required the U.S.P.C. to follow pre-existing D.C. Parole Board guidelines, but expressly permitted the U.S.P.C. to amend or supplement those guidelines.  D.C. Code §24-131(a)(1).

After Ford's reparole hearing, on April 12, 1999, the U.S.P.C. granted Ford parole effective June 23, 1999, after the service of 18 months.  On June 22, 1999, the U.S.P.C. retarded the effective date of Ford's parole by 51 days to August 13, 1999, in order to develop a release plan.

On June 24, 1999, Ford was transferred to Hope Village, a drug aftercare program.  Five days later on June 29, 1999, Ford's urine sample tested positive for cocaine and he was terminated from the program and returned to D.C. custody.  As a result of this infraction, through a Notice of Action dated July 20, 1999, the U.S.P.C. retarded Ford's parole date to October 12, 1999, and recommended placement in a drug aftercare facility for 60 days prior to that date.

On August 13, 1999, Ford was returned to Hope Village for drug aftercare treatment. Two days later, at 3 a.m. on August 15, 1999, Ford pointed a gun at a case manager and asked to leave the facility.  When the case manager told Ford that he would need to call a supervisor, Ford fled the premises.  On August 31, 1999, the D.C. Department of Corrections suspended Ford's parole pending a further determination by the U.S.P.C.

On September 28, 1999, based upon Ford's conduct in pointing a gun at a case manager and escaping from the Community Corrections Center, the U.S.P.C. issued a Notice of Action *in absentia* retarding Ford's parole date and ordering that a rescission hearing be held upon his return to custody.  The Notice of Action was copied to the D.C. Department of Corrections to be forwarded to Ford upon his return to custody.  Ford alleges that he never received this Notice of Action.

Ford was arrested on November 12, 1999.  On January 9, 2001, Ford sent a memorandum to the U.S.P.C. requesting that some action be taken with respect to his parole status.  In that memorandum, Ford stated that he first learned of the allegation that he pointed a gun at a case manager upon reading the affidavit of arrest.  Ford further stated that he was charged in the D.C. Superior Court with assault with a dangerous weapon, possession of a firearm during the commission of a violent or dangerous offense, and escape, but that these charges were dismissed on October 4, 2000, because the prosecutor was not prepared for trial.  Ford further stated, however, that one month before that date, on September 13, 2000, he was re-indicted on the escape charge.

In preparation for a rescission hearing, the U.S.P.C. obtained information indicating that on November 11, 1999, Ford was charged with armed carjacking, first-degree assault, armed

robbery, theft, unlawful taking of a motor vehicle, and "Con-Armed Carjacking" by the State of Maryland. On April 13, 2001, Ford was sentenced on the first-degree assault charge and pled guilty to the armed robbery charge. Ford was sentenced to 7 years in prison to run concurrently with his D.C. sentence.

By letter dated August 17, 2001, the U.S.P.C. advised Ford that a rescission hearing would be held and that his criminal conduct in Maryland would be considered during the hearing. The U.S.P.C also enclosed documentation regarding the charges in Maryland. On September 12, 2001, the U.S.P.C. held Ford's rescission hearing. The hearing officer found that Ford had pointed a gun at the case manager at Hope Village and escaped the facility, and that he had committed the armed robbery in Maryland in the manner described in the Statement of Charges. Based on this conduct and Ford's prior offenses, the hearing officer recommended that Ford's October 12, 1999 parole date be rescinded and that he serve the remainder of his sentence. On October 12, 2001, the U.S.P.C. adopted the hearing officer's recommendation.

In subsequent reviews on February 13, 2004, and February 3, 2006, the U.S.P.C. denied parole, determining that Ford's incarceration should continue to the expiration of his sentence until his mandatory release date on May 2, 2018.

In his present petition, Ford asserts that his rights under the Fifth and Sixth Amendments to the Constitution of the United States were violated with respect to the September 12, 2001 hearing. Specifically, Ford alleges that he did not receive prior notice of the hearing; that his request for counsel was denied; that the U.S.P.C. relied upon hearsay evidence; that the U.S.P.C.'s findings were based upon an unsigned final progress report; that no witness testified regarding the alleged misconduct; and that the police report regarding the misconduct was not

-4-

entered into evidence.  The Court has previously dismissed all of Ford's claims except those regarding his request for counsel and prior notice of the hearing.  [Record No. 5]

## II.      DISCUSSION

The United States Supreme Court explained the requirements of due process in the context of prison disciplinary proceedings in *Wolff v. McDonnell*, 418 U.S. 539 (1974).  In *Wolff*, the Court explained that, while prisoners retained their rights under the Constitution, the scope of those protections was necessarily circumscribed by the fact of their incarceration.  *Id*. at 556. Concluding that Nebraska law created a due process liberty interest in good time credits, the Supreme Court held that those credits may only be forfeited after procedures akin to those discussed in *Morrissey v. Brewer*, 408 U.S. 471 (1974), were followed.  The requirements of procedural due process vary accordingly to the situation,, and in the context of proceedings to forfeit good time credits, the Court held that a prisoner must receive advance written notice of the claimed violation; should generally be allowed to call witnesses and present evidence in his defense; and must be given a written statement as to the evidence relied upon and the reasons for the disciplinary action taken.  *Wolff*, 418 U.S. at 561.

However, the Court subsequently held that the Constitution does not, of its own force, create a liberty interest in receiving parole.  *Greenholtz v. Inmates of the Nebraska Penal & Correctional Complex*, 442 U.S. 1, 7 (1979) ("There is no constitutional or inherent right of a convicted person to be conditionally released [*i.e.*, released on parole] before the expiration of a valid sentence.").  At most, the Constitution protects "a legitimate claim of entitlement" that can arise only under state law.  *Id.*; *Inmates of Orient Correctional Institution v. Ohio State Adult Parole Authority*, 929 F.2d 233, 235 (6th Cir. 1991).  Where the decision to grant parole is

-5-

within the broad discretion of the parole authority, state law creates no "legitimate claim of entitlement." *Id*. at 236.[1]  This remains so after the prisoner has been notified of his parole date, *Jago v. Van Curen*, 454 U.S. 14 (1981) (notification of parole to prisoner does not create liberty interest requiring due process hearing before subsequent rescission of parole), or even after the prisoner is transferred to a pre-release facility, *Meachum v. Fano*, 427 U.S. 215 (1976).  *See also Rowan v. Traughber*, 2002 WL 31085197 (6th Cir. 2002) (parole board's initial grant of parole did not create due process liberty interest in parole requiring hearing before parole rescission).

Because the Constitution itself provides Ford with no due process liberty interest in parole, the Court must determine whether District of Columbia law provides such an interest. *Muhammad v. Mendez*, 200 F.Supp.2d 466, 470 (M.D. Pa. 2002) (D.C. law, not federal law, applies to parole determinations regarding D.C. Code violators); *Damiano v. Florida Parole and Probation Commission*, 785 F.2d 929, 932 (11th Cir. 1986).

The U.S.P.C. guidelines governing a prisoner's release on parole and retarding or rescinding that parole are set forth at 28 C.F.R. §2.86.  Those regulations require good conduct at the institution or prerelease program prior to parole, and permit the institution to retard or rescind a parole date for disciplinary infractions or any new or significant information regarding

---

[1]  In *Sandin v. Conner*, 515 U.S. 472 (1995), the Supreme Court expressed its belief that *Greenholtz* and its progeny, by focusing solely upon whether the statutory or regulatory language was of "an unmistakably mandatory character" to determine whether a due process liberty interest existed, had "[s]trayed from the real concerns undergirding the liberty protected by the Due Process Clause." *Id*. at 474.  After *Sandin,* state-created liberty interests will generally be found only where the restraint "imposes atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life." *Id.*  Following *Sandin*, however, the D.C. Court of Appeals has held that under D.C. law, "the exercise of official discretion over set-off dates for parole hearings, if done . . . under a regime of policy guidelines established by the parole authorities themselves, cannot be held to create a liberty interest under *Sandin* if there is not a liberty interest under *Greenholtz*." *Hall v. Henderson*, D.C., 672 A.2d 1047, 1049 (1996).

the prisoner.  They further make clear that parole does not become effective until a certificate of parole is delivered to and signed by the prisoner.  28 C.F.R. §2.86(a)(b)(e).

The Court concludes that nothing in the applicable parole suitability or rescission regulations creates a Due Process liberty interest, and hence no due process hearing was required before Ford's parole was rescinded.  *See Brown-Bey v. Hyman*, D.C., 649 A.2d 8, 9-10 (1994) (D.C. parole guidelines do not create Due Process liberty interest, hence D.C. prisoner who escaped from halfway house pending parole was not entitled to hearing prior to rescission of parole); *Ellis v. District of Columbia*, 84 F.3d 1413 (D.C. Cir. 1996) (same); *Cephus v. Braxton*, 1992 WL 73490 (D.D.C. 1992) (unpublished disposition) (after D.C. prisoner escaped from halfway house, his parole may be rescinded without a hearing under *Jago*).  The fact that the U.S.P.C. initially ordered parole for Ford does not change this result, *Cole v. Harrison*, 271 F.Supp.2d 51, 53 (D.D.C. 2002) ("Petitioner did not acquire a liberty interest as a result of the initial order that granted him parole, and that order was subject to rescission without affording him due process at any time prior to his release from custody.")

Further, even if the applicable parole regulations did trigger a due process liberty interest for Ford, the record demonstrates that the requirements of procedural due process were satisfied here.  Ford has made allegations regarding his receipt of and sufficiency of the Notices of Action for the rescission hearing and his right to be represented by counsel.

Ford appears to allege, in contradictory fashion, that he did not receive either of these Notices of Action, but that if he did receive them, they did not afford him adequate notice.  The applicable regulations indicate that notice of the parole hearing is to be sent to the prisoner advising him of the hearing and the information to be considered at the hearing.  28 C.F.R.

§2.34. Respondent has provided authenticated copies of the September 28, 1999 and August 17, 2001 Notices of Action. These documents plainly provided Ford with adequate notice of the hearing and the information to be considered in compliance with Section 2.34 and due process as described in *Wolff*, 418 U.S. at 565-66. Further, Ford's bare and internally-contradictory allegations that he did not receive the Notices of Action are manifestly insufficient to overcome the presumption of regularity which attaches to a document submitted for mailing. *Hagner v. United States*, 285 U.S. 427, 430 (1932).

Ford also alleges that he requested that the U.S.P.C. or B.O.P. provide him with an attorney to assist him at the hearing, and that he had an "absolute right" to have an attorney's assistance. U.S.P.C. regulations do permit a prisoner to have another person offer a statement on his behalf. 28 C.F.R. §2.34(e). But neither the regulation nor the due process clause requires the government to provide a prisoner with an attorney at a parole hearing, *Wolff*, 418 U.S. at 569; *Damiano*, 785 F.2d at 932, and hence Ford has failed to state a claim in this regard.

### III.    CONCLUSION

For the reasons discussed above, it is hereby

**ORDERED** as follows:

(1)    Petitioner Ford's petition for a writ of habeas corpus is **DENIED** and this action shall be **DISMISSED**, with prejudice.

(2)    The Court certifies that any appeal would not be taken in good faith. 28 U.S.C. §1915(a)(3); *McGore v. Wrigglesworth*, 114 F.3d 601, 610-11 (6th Cir. 1997); *Kincade v. Sparkman*, 117 F.3d 949 (6th Cir. 1997).

-9-

(3)    Judgment shall be entered contemporaneously with this Memorandum Opinion
and Order in favor of the Respondent.

This 20th day of December, 2006.

Signed By:

*Danny C. Reeves*  DCR

United States District Judge